UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


**RICHARD D. MILLS and IRENE P. MILLS**                                  **PLAINTIFFS**


**V.**                                                 **CIVIL ACTION NO.1:07CV73 LTS-RHW**


**STATE FARM FIRE AND CASUALTY COMPANY**                                  **DEFENDANT**


## MEMORANDUM OPINION

The Court has before it the motions [6] [10] of State Farm Fire and Casualty Company (State Farm) to dismiss the complaint. As grounds for its motions, State Farm asserts that plaintiffs have failed to join the mortgagees of the insured property, Regions Bank and Whitney National Bank. State Farm also asserts that it is entitled to prevail on the merits of this action as a matter of law.

With respect to the merits of this action, State Farm asserts three theories to support its motion to dismiss. State Farm contends (in the alternative): 1) that the plaintiffs have made an "election of remedies" by accepting benefits paid under their flood coverage, 2) that the plaintiffs' claim for wind damage is for "a prior unrepaired loss," and for that reason, the claim is not payable under State Farm's homeowners policy; and 3) that the plaintiffs are "equitably estopped" from asserting a claim under their homeowners policy by their having accepted benefits payable under their flood insurance policy. For the reasons discussed below, these motions will be denied.

This is an action to recover property insurance benefits for damage that occurred during Hurricane Katrina. At the time of the storm, the plaintiffs were the named insureds under a homeowners policy (policy number 24-10-2467-2) issued by State Farm. The plaintiffs were also insured under a flood policy sold by State Farm under the National Flood Insurance Program (policy number 24-0666-7). The insured property was located at 2452 Iki Place, Diamondhead, Mississippi.

The insured property was extensively damaged in the storm. The policy limits of the plaintiffs' flood coverage ($176,500 for structure and $76,700 for contents) was apparently offered by State Farm and accepted by the plaintiffs, and there is no current controversy concerning the flood policy. There is a dispute between the plaintiffs and State Farm concerning the homeowners policy over whether there was damage to the insured property caused by a covered peril, i.e. windstorm, and, if so, the extent of this covered loss.

The homeowners policy has coverage limits of $187,400 (dwelling), $18,740 (dwelling extension), $140,550 (personal property), and "actual loss sustained" for loss of use of the insured property. Plaintiffs allege that there has been a breach of the homeowners insurance policy and that they are entitled to collect policy limits under the homeowners policy. Plaintiffs also allege that State Farm's claims handling practices were tortious under applicable Mississippi law. (Complaint Paragraphs 18 through 20)

### State Farm's Theory of Election of Remedies

I find no merit in State Farm's contention that by accepting benefits under their flood policy the plaintiffs have made an election of remedies that precludes collection of benefits under their State Farm homeowners policy. State Farm acknowledges that these policies cover different perils. The flood policy covers water damage that is excluded from coverage under the homeowners policy, and the homeowners policy covers wind damage that is not a covered peril under the flood policy. State Farm is apparently arguing that the plaintiffs can lawfully collect insurance benefits under only one of these two policies, even if the insured property was damaged by both wind and water. This is a novel argument, to say the least.

State Farm has offered no evidence to support its underlying contention that the plaintiffs were over-insured. In order to establish this, State Farm would be obliged to show that the plaintiffs' actual losses were less than the combined limits of all applicable insurance coverages. Without conclusive evidence of the amount of the loss, it is impossible to establish whether the insured value of the property (the only known figures in the equation) is more than, equal to, or less that the total value of the property or the total damage to the property (and damages for loss of use) from all causes during the storm. State Farm repeatedly asserts that the plaintiffs' collection of benefits under the State Farm homeowners policy would amount to a "windfall" and a "double recovery," but State Farm has offered no evidence to support these contentions.

The total value of the insured property sets the upper limit on the amount of insurance a policyholder may collect for physical damage to the insured property. The limits of coverage also set an upper limit on the amount a policyholder may collect. Assuming a total loss from a covered cause is established, the policyholder would recover the lower of these two upper limits under the policy in question. Within these limits, the insured may seek recovery under all the policies covering the perils that contributed to the loss.

If, as it appears, there was no question that the damage caused by flooding during the storm was equal to or greater than the flood policy limits, the payment of those limits would reduce the plaintiffs' total losses. But collection of those limits would not amount to a waiver of benefits for wind damage under the plaintiffs' State Farm homeowners policy. So long as there are damages that may be established from a peril covered under the homeowners policy, and so long as the insureds have not been fully compensated for their total loss, there has been no "election of remedies." Indeed,

the entire concept of election of remedies has nothing to do with the collection of insurance benefits under policies that cover different perils.

Requiring an insured to elect whether to seek policy benefits under only one of two policies--both of which the insured contends to cover perils that contributed to the loss--would be a Hobson's choice of the highest order. The insured has paid separate premiums for coverage from different perils, and where the evidence establishes that both of these different perils have caused damage to the insured property, the insured is entitled to look for compensation to all of the coverages for which he has paid.

### State Farm's Theory of "Unrepaired Loss"

State Farm contends that the "anti-concurrent cause" provision in its homeowners policy prohibits the imposition of liability for wind damage sustained during Hurricane Katrina. That provision states:

> *Section One - Losses Not Insured*
> \* \* \*
> *2.   We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; of (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:*
> \* \* \*
> *c.   Water Damage, meaning:*
> *(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;*

State Farm acknowledges that I have previously held that this contract provision is ambiguous in the context of damages caused by Hurricane Katrina. *Tuepker v. State Farm*, 2006 WL 1442489 (S.D.Miss.2006) (*Tuepker*). State Farm points out that it has appealed this decision, and State Farm contends that the "anti-concurrent cause" provision "was in effect at the time Plaintiffs [sic] loss was adjusted and remains part of the policy at issue and according to Mississippi case law, is applicable and unambiguous until such time as all appeals related to this Court's decision in *Tuepker* are exhausted." (State Farm Motion To Dismiss at page 10)

State Farm reasons that because there was water damage to the plaintiffs' property, it is entirely relieved of any liability under its homeowners policy even if there was wind damage that occurred before the arrival of the water. Following the logic of this argument, State Farm would have no liability under its homeowners policy if there were any water damage, no matter how minimal, that affected the insured property. In

the context of wind coverage during a hurricane, this would mean that the wind coverage under the homeowners policy would be completely negated in many instances.  If this argument were accepted, it would follow that in the case of an insured property that took an inch of water and lost its roof to the winds, State Farm would owe the policy holder nothing under its homeowners coverage.  I find this logic unpersuasive, and I find the exclusion so poorly drafted and ambiguous that I am uncertain whether it could ever support the interpretation State Farm urges the Court to adopt.

As I ruled in *Tuepker*, the water damage exclusion in the State Farm homeowners policy is valid.  State Farm is not liable under its homeowners coverage for any damage it can prove to have been caused by water, as that exclusion is defined in the policy.  State Farm is liable, however, under its homeowners policy for wind damage because there is no exclusion for this type of loss.  The "anti-concurrent cause" provision does not clearly and unambiguously negate the broad coverages provided under the other terms of the State Farm homeowners policy.

Every expert who has rendered an opinion in the Hurricane Katrina cases I have heard has acknowledged that the storm's maximum winds preceded the storm surge flooding.  These experts differ on the length of time that the strongest winds preceded the highest water, but they uniformly agree that the highest winds came ahead of the highest storm surge flooding.  State Farm's argument that the wind damage is not recoverable because it is a "prior unrepaired loss" is apparently premised on the idea that, even if the hurricane winds did severe damages to the insured property before the arrival of the storm surge flooding, State Farm would owe the policyholder nothing under their homeowners coverage if the insured property then sustained extensive flood damage.  The reasoning seems to be that if the insured property was damaged by wind, a covered peril under the homeowners policy, no benefits could be collected because the wind damage was exacerbated by flood damage, an excluded peril.  This logic is not supported by the citation of any Mississippi authority, and it seems to me to fly in the face of the many cases decided in Mississippi after Hurricane Camille.

In my view, if there is wind damage covered under a homeowners policy, the right to collect the insurance applicable to that damage would come into existence at the time the damage occurred.  If the insured property were later more severely damaged by flooding, the wind damage would not become payable under the flood policy; the insurer under the homeowners policy would still be responsible for this wind damage.  Accepting State Farm's argument would unfairly shift the responsibility for this wind damage onto the flood insurance underwriter or onto the policyholder who had no flood insurance.

The bottom line in Mississippi jurisprudence, in the context of claims under an "all risks" policy such as State Farm's homeowners policy, for damage that occurs during a hurricane is that wind damage is covered and water damage is validly excluded.  The burden of proof to establish the exclusion is on the insurer. *Tuepker*, supra.

## State Farm's Theory of Equitable Estoppel

State Farm's theory of equitable estoppel appears to me to be a re-hash of the "election of remedies" argument.  It is apparently uncontested that the insured property was a total loss and that the destruction of this property was caused, in substantial part, by flooding during the storm.  The plaintiffs accepted and State Farm paid the limits of coverage under the plaintiffs' flood policy.  State Farm contends that by accepting their flood insurance benefits, the plaintiffs have forfeited their right to collect any benefits under their State Farm homeowners policy.  This contention is supported by reasoning that appears to me to be contorted at best.  Both the theories of "election of remedies" and equitable estoppel rely upon a core factual issue, i.e. whether the flood insurance benefits have fully compensated the plaintiffs for their losses.  State Farm has offered no evidence that would support this lynchpin of these two theories.

State Farm contends that if the plaintiffs are permitted to seek benefits under their homeowners policy, the United States of America will be "compelled to seek recoupment of the erroneous payments under the flood policy."  I find no support for this contention.  In the first place, it is State Farm that evaluated the plaintiffs' flood insurance claim and decided to pay the flood insurance policy limits.  In the second place, there is no indication in the record before me that this payment was not properly made, based on the losses State Farm assessed during the adjustment process.

State Farm also contends that the plaintiffs are now denying that there was any flood damage to the insured property.  This is an assertion that has no factual support that I can discern in the record.  To say that this logic strains credulity would be a great understatement.  To say that by making a claim under their homeowners policy the plaintiffs have committed "Concealment of Fraud" that voids their flood insurance coverage, without evidentiary support for that conclusion, is utter nonsense.  The flood insurance coverage is a settled issue, and the question now is whether, in addition to these flood damages, the plaintiffs can prove a loss that is covered under the homeowners policy that exceeds these flood insurance benefits.

The plaintiffs have two mutually exclusive coverages that the storm potentially brought into play: 1) flood coverage under the National Flood Insurance Program and 2) windstorm coverage under their State Farm homeowners policy.  There was flood damage to the insured property, and State Farm paid the flood insurance coverage limits.  By contending that the insured property also sustained damage from hurricane winds, plaintiffs have stated a cause of action under their homeowners policy.  Since the State Farm homeowners policy is an "all risks" policy as far as the insured dwelling is concerned, and since windstorm damage is a covered peril as far as the insured personal property is concerned, State Farm will owe policy benefits (up to the lower of the total loss less the flood insurance collection or homeowner policy limits) unless it can meet its burden of proof that the water exclusion in its homeowners policy applies to the thus far uncompensated portion of the plaintiffs' loss.  By offering and accepting the flood insurance policy limits, the parties have indicated their agreement that at least

to the extent of these benefits the damage to the insured property was caused by flooding, and the parties are now judicially estopped from denying this.

Whether and to what extent the hurricane winds caused or contributed to the overall damage is the central question in this lawsuit.  Equally critical will be the fact questions of total damages sustained and the total value of the insured property.  I find that the complaint states a cause of action sufficient to allow this action to go forward.  State Farm's motion to dismiss will therefore be denied.

## State Farm's Request
## That Regions Bank and Whitney National Bank Be Joined as Parties

State Farm's motions indicate that Regions Bank and Whitney National Bank were mortgagees of the insured property and additional loss payees on the State Farm homeowners policy at the time of the storm.  These motions also indicate that the debts secured by these mortgages have been fully satisfied from the proceeds of the flood insurance policy.  In these circumstances, there is no reason to require Regions Bank or Whitney National Bank to participate in this lawsuit.  State Farm offers a number of possible events which might justify the participation of these lenders in subsequent litigation, but at this point these events are very speculative and the forced joinder of these former mortgagees is not justified.  If these mortgagees still have an interest in the insured property, I will entertain a motion that they be treated as and given the same alternatives as were afforded to the mortgage lender in *Buchanan v. State Farm Fire & Casualty Company*, Civil Action No 1:06cv419 LTS-RHW, 2007 WL 672046 (S.D.Miss.)

Accordingly, I will deny State Farm's motions to dismiss [6] [10].  An appropriate order will be entered.

**DECIDED** this 18th day of May, 2007.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE